UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

WANDA S.[1]

    **Plaintiff,**

v.

    Case No. 3:20-cv-0230
    Magistrate Judge Norah McCann King

COMMISSIONER OF SOCIAL SECURITY,[2]

    **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Wanda S. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, ("DIB") and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. ("SSI"). Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications. This matter is now before the Court, with the consent of the parties, *Joint Consent of the Parties*, ECF No. 5, on *Plaintiff's Statement of Errors*, ECF No. 10, *Defendant's Memorandum in Opposition*, ECF No. 14, *Plaintiff's Reply*, ECF No. 15, and the *Certified Administrative Record*, ECF No 8. After careful consideration of the entire record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court grants *Plaintiff's Statement of Errors* and reverses the Commissioner's decision and remands the action for clarification of Plaintiff's residual functional capacity.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* S.D. Ohio General Order 22-01.

[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

1

I.      PROCEDURAL HISTORY

Plaintiff filed her application for DIB on December 28, 2016, R. 291-97, and for SSI on January 18, 2017, R. 298-303, alleging that she has been disabled since June 1, 2016, due to a number of physical and mental impairments.[3] The applications were denied initially and upon reconsideration. R. 121-48, 151-84. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 230-31. Administrative Law Judge ("ALJ") Kevin R. Barnes held a hearing on January 10, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 97-120. In a decision dated April 24, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from June 1, 2016, Plaintiff's alleged disability onset date, through the date of that decision. R. R. 16-34. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on  April 27, 2020. R. 1-7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 23, 2022, the case was reassigned to the undersigned. ECF No. 17. The matter is ripe for disposition.

II.     LEGAL STANDARD

   A.      **Standard of Review**

In reviewing applications for Social Security disability benefits, "[t]he Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial

---

[3] References to pages as reflected in the Certified Administrative Record will be cited as "R. _."

evidence, shall be conclusive . . . ."). The United States Supreme Court has explained the substantial evidence standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (cleaned up); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (cleaned up). In addition, "'[w]here substantial evidence supports the [Commissioner's] determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

    **B.**    **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R§§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof through step four; at step

five, the burden shifts to the Commissioner." *Rabbers*, 582 F.3d at 652 (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the

plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 46 years old on her alleged disability onset date R. 33. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since that date. R. 19.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine with radiculopathy, obesity, varicose veins with residuals of ablation, diabetes mellitus, major depressive disorder, and anxiety. R. 19. The ALJ also found that Plaintiff's diagnosed sleep apnea, carpal tunnel syndrome, mild stage primary open-angle glaucoma, pernicious anemia, and status post hysterectomy, and Plaintiff's complaints of chest pain and migraine headaches, were not severe. R. 21-23.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 23-27.

At step four, the ALJ found that Plaintiff had the RFC to perform a limited range of "light" work. R. 27.[4] The ALJ also found that Plaintiff had no past relevant work. R. 33.

At step five, the ALJ found that a significant number of jobs existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 33-34. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from her alleged disability onset date through the date of the decision. R. 34.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the

---

[4] The narrative portion of the ALJ's decision also referred to an RFC for a limited range of sedentary work. *See* R. 27-33. This Court will address this inconsistency later in this opinion.

Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Statement of Errors,* ECF No. 10; *Plaintiff's Reply Brief*, ECF No. 15. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief,* ECF No. 14.

## IV. DISCUSSION

Although the ALJ found that Plaintiff has both physical and mental impairments, "[h]er allegations of disability center upon significant, daily pain" in her low back and legs. *Plaintiff's Statement of Errors*, ECF No. 10, PageID# 2427. Plaintiff specifically disagrees with the ALJ's evaluation of the opinions of her treating physician and of two consultative examiners and challenges the ALJ's RFC determination.

### A. Relevant Medical Evidence

The record reflects Plaintiff's long-standing complaints of lower back and leg pain, numbness and tingling. An MRI of the lumbar spine revealed spondylolisthesis with bilateral spondylolysis at L5-S1 and disc disease at L5-S1 with foraminal narrowing. R. 832. Findings on neurological examinations in 2016 and 2017 included 5/5 strength in all extremities except limited strength of 4/5 in the left lower extremity due to pain, normal muscle tone but slightly decreased muscle bulk in the left calf muscles, intact and symmetrical sensation to touch in all extremities, and intact gait on standing and sitting. R. 832, 839, 845. An EMG revealed sensory polyneuropathy. R. 832, 839, 846. A CT of the lumbar spine revealed interval mild progression of spondylolisthesis and severe neural foraminal encroachment at L5-S1, and mild degenerative changes at L4-5. R. 846.

In May 2017, Phillip Swedberg, M.D., performed a consultative physical examination of Plaintiff at the request of the state agency. R. 956-65. Dr. Swedberg noted a steady gait without use of ambulatory aids and comfort in the sitting and supine positions. R. 962. On clinical examination, forward bending, extension, and lateral motion of the spine were diminished. R. 962-63. There was no muscle spasm or tenderness to percussion; straight leg raising was normal bilaterally. R. 963. There was no evidence of muscle weakness or atrophy, and all sensory modalities were well-preserved. Deep tendon reflexes were brisk bilaterally. *Id.* Range of motion of the left hip and left knee were diminished, although there was no evidence of effusion, warmth, tenderness, crepitus or ligamentous laxity of the left knee. R. 964. Dr. Swedberg opined:

> Based on the findings of this examination, the patient appears capable of performing a mild to moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects. In addition, the patient has no difficulty reaching, grasping, and handling objects. There are no visual and/or communication limitations nor are there environmental limitations.

R. 964.

In January 2019, Antony T. Jacob, M.D., one of Plaintiff's treating physicians, reported that Plaintiff had undergone physical therapy and epidural injections "without much benefit." R. 2382. Plaintiff rated her pain as 8/10 and reported that standing or bending is painful. She also experienced tingling numbness in the left leg. *Id*. On clinical examination, there was tenderness at the L4-L5 level and in the right sacroiliac joint. R. 2385. Straight leg raising was decreased bilaterally, worse on the left. Strength was 5/5 and sensations were intact. Deep tendon reflexes were slightly decreased in the left knee. *Id.* Plaintiff could arise from a sitting position without difficulty but had difficulty on the right when performing a squat. Gait was normal. Id. Dr. Jacob diagnosed chronic low back pain, degenerative disc disease, and lumbar radiculopathy. *Id.* He opined:

> This is a 49 years old female with chronic low back pain has [sic] limitations in her physical activities. She may be able to do a light duty work with the frequent changing her position in sitting and standing and lifting restriction of 5 pounds only. EMG nerve conduction study showed evidence of left-sided L5-S1 radiculopathy. …

*Id*. In a physical capacities evaluation, Dr. Jacob indicated that, throughout an 8-hour workday, Plaintiff could stand/walk 2 ½ to 4 hours, sit for 4 ½ to 6 hours, alternately sit or stand with the opportunity to change positions for 4 ½ to 6 hours; she could frequently lift 5 pounds and occasionally lift 10 pounds, but could never bend, squat, crawl, or climb. R. 2386. She has the RFC to perform sedentary, but not light, work on a "sustained basis." R. 2387.

In February 2019, after the administrative hearing, B.T. Onamusi, M.D., performed another consultative physical examination of Plaintiff, upon referral of the ALJ. R. 2365-81. Plaintiff reported that she can sit for 30 minutes, stand for 20 minutes, walk up to half a block, and lift or carry 8 pounds. R. 2378. She performs laundry and grocery shopping, can drive, and performs limited housework. *Id*. On clinical examination, Dr. Onamusi noted that muscle power and tone were normal in all muscle groups; reflexes in the ankles, knees, elbows and wrists were 2+ and symmetrical. Sensation to light touch and pain was preserved in all extremities. Babinski and Romberg signs were negative. *Id*. There was mild tenderness at the lumbosacral junction region, but no paraspinal muscle spasm. Straight leg raising was negative bilaterally. *Id.* Plaintiff walked with a normal gait, *id.*, and could walk on her heels and toes. R. 2379. Dr. Onamusi diagnosed chronic low back pain with left radicular symptoms and opined:

> Functionally, it is my opinion that claimant is able to sit frequently, stand or walk low end of frequently, bend occasionally, squat with support occasionally, lift up to 20 pounds occasionally, and use the upper extremities for gross and fine motor tasks frequently.

*Id*.

### B. ALJ's Evaluation of the Medical Opinions

The ALJ reviewed the medical evidence of record and accurately summarized Dr. Jacob's opinion and those of the consultative examiners. The ALJ then evaluated those opinions as follows:

> In light of the combined effects of the claimant's several impairments, including obesity and its aggravating effect, the documentary record does not support limiting the claimant to a reduced range of light work activity. The claimant has significant objective findings showing neural foraminal stenosis at L5-SI. However, physical examinations do not reveal significant correlating clinical findings, such as reflex, sensory, or motor deficits. Further straight leg raise testing by Dr Swedberg and Dr Onamusi was negative. Given the effects of obesity, it is appropriate to restrict the claimant to the basic exertional requirements of sedentary work. She complained of significant low back pain when sitting, but Dr Jacob noted that she could sit 4-1/2 to 6 hours and stand 2-1/2 to 4 hours during an 8-hour workday. The undersigned has limited the claimant to the basic exertional requirements of work and included the opportunity to alternate her position between sitting and standing for 15 minutes every hour. Dr Jacob indicated that the claimant could not perform any postural activities, but given the lack of neurological deficit and no more than moderately reduced range of lumbar motion, the record does not support a total preclusion of stooping, balancing, crouching, or kneeling. Additionally, SSR 96-9p states that limitations in climbing and/or postural activities would not erode the base of sedentary work significantly. While Dr Jacob's assessment of no postural activities is not consistent, even arguendo that those limits were supported, they would not affect significantly the sedentary occupational base. The claimant should not perform more than occasional balancing, stooping, crouching, or kneeling. Because of the additional stress placed on the lumbar spine when crawling, the claimant should not perform that postural activity as part of job duties. The claimant cannot climb ladders, ropes, or scaffolds because those activities exceed the exertional demands of sedentary work (See also, SSRs 83-14 and 96-9p). Although carpal tunnel syndrome is not considered a severe impairment, in light of the claimant's history of several hand surgeries and her ongoing complaints of difficulty with manipulation, significant benefit of doubt is granted and the claimant is limited to no more than frequent handling and fingering bilaterally. Finally, and as a precautionary measure, the claimant should avoid hazardous and unprotected heights. The record supports no additional physical limitations.

R. 29. The ALJ assigned "partial weight" to the opinions of the consultative examiners:
> Taking into consideration the entire record, as well as the subjective

> complaints of the claimant, the record supports finding that she has severe physical impairments. However, taking into consideration the overall record, the record supports a restriction to the reduced range of sedentary work set forth above. Accordingly, those opinions are entitled to partial weight.

R. 32. The ALJ gave "great weight" to Dr. Jacob's opinions "because he is a treating source, his conclusions are consistent with the objective and clinical findings of record, and his restrictions are reasonable and consistent with a reduced range of sedentary work activity."

*Id.*

> Dr Jacob reported that the claimant could lift up to 10 pounds occasionally and 5 pounds frequently. He also indicated that the claimant could sit, stand, and walk consistent with the requirements of sedentary work activity. It is noted that Dr Jacob indicated the claimant could alternately sit or stand provided she had the opportunity to change position up to 4-1/2 to 6 [hours]. However, that statement is inconsistent with his earlier statement concerning sit, stand, and walk limitations. Further, Dr Jacob indicated that the claimant could sustain the physical demands of sedentary work. Dr Jacob also indicated the claimant could perform no bending, squatting, crawling, or climbing. As set forth above, the record does not support a total ban on those postural activities and the claimant was limited to occasional postural activities, with the exception of a preclusion of crawling and climbing ladders, ropes, or scaffolds. However, and also as noted above, even if the claimant were precluded from those activities, SSR 96-9p confirms that such a limitation, even if supported herein, would have no significant effect on the unskilled sedentary job base. Further, Dr Jacob has not indicated that the claimant is disabled. Because of these discrepancies in Dr Jacob's assessment is [sic] not entitled to controlling weight. He has not indicated that the claimant is disabled and, therefore, deferential weight is not appropriate or supported. Dr Jacob's report is entitled to great weight because it is consistent with the evidentiary record concerning the claimant's low back and other issues and supports the above-described residual functional capacity finding for a reduced range of sedentary work.

*Id.*

Plaintiff contends that the ALJ erred in his evaluation of these three medical opinions. This Court disagrees. An ALJ must consider all medical opinions in evaluating a claimant's applications. 20 C.F.R. §§ 404.1527(c), 416.927(c). Under the regulations in force at the time

10

that Plaintiff filed her applications, the opinion of a treating provider must be accorded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If the ALJ finds that either of these criteria have not been met, he is then required to apply the following factors in determining the weight to be given a treating provider's opinion: "The length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. ..." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004). In this regard, the ALJ is required to look at the record as a whole to determine whether substantial evidence is inconsistent with the treating provider's assessment. *See* 20 C.F.R. §§ 404.1527(c)(2), (4), 416.927(c)(2), (4). Finally, the Commissioner must provide "good reasons" for discounting the opinion of a treating provider, and those reasons must both enjoy support in the evidence of record and be sufficiently specific to make clear the weight given to the opinion and the reasons for that weight. *Gayheart v. Comm'r of Soc. Sec*, 710 F.3d 365, 376 (6th Cir. 2013); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007)(citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5). However, a formulaic recitation of factors is not required. *See Frien v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) ("If the ALJ's opinion permits a claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.").

Where, as here, the ALJ does not assign controlling weight to the opinion of the claimant's treating physician, the ALJ must explain the weight assigned to the opinions of the medical sources:

> Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii).

As is clear from this Court's summary of the relevant portions of the record and of the ALJ's consideration of Dr. Jacob's opinions and those of the consultative examiners, the ALJ's evaluation of these medical opinions fully conformed to the governing standards and enjoys substantial support in the record. The ALJ accurately summarized the medical evidence of record, considered the medical opinions in light of that record, and clearly explained his evaluation of those opinions and the weight accorded those opinions. Plaintiff's complaint to the contrary is without merit.

### C.  Residual Functional Capacity Assessment

However, the ALJ's finding regarding Plaintiff's RFC is inconsistent and ambiguous. The ALJ first expressly found that Plaintiff "has the residual functional capacity to perform light work" subject to additional postural and non-exertional limitations. R. 27. At step 5 of the sequential evaluation, the ALJ appeared to reiterate that finding:

> If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.02. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert

>whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.

R. 33-34. Yet, other portions of the ALJ's decision – most significantly in the ALJ's discounting of the consultative examiners' opinions and the ALJ's assigning "great weight" to Dr. Jacob's opinion - referred to an RFC for a limited range of sedentary work. *See, e.g.*, R. 29 ("Given the effects of obesity, it is appropriate to restrict the claimant to the basic exertional requirements of sedentary work."), R. 31 ("A residual functional capacity for the reduced range of sedentary work set forth above takes into account the location, duration, frequency, and intensity of the claimant's alleged symptoms, as well as precipitating and aggravating factors."), R. 32 ("However, given the combined effects of the claimant's impairments, her treatment history, and the objective and clinical findings of record, the claimant cannot reasonably be expected to perform more than a reduced range of sedentary work activity"; "However, taking into consideration the overall record, the record supports a restriction to the reduced range of sedentary work set forth above"; "Dr Jacob's opinion is entitled to great weight because he is a treating source, his conclusions are consistent with the objective and clinical findings of record, and his restrictions are reasonable and consistent with a reduced range of sedentary work activity").

The Acting Commissioner argues that the ALJ's reference to "light" work "was clearly a drafting error" that does not warrant reversal. *Defendant's Memorandum in Opposition*, ECF No. 14, PageID# 2451. Plaintiff argues that, even assuming a mere drafting error, the error cannot be viewed as harmless in light of the fact that Plaintiff turned 50 years of age in November 2019, *Plaintiff's Statement of Errors,* ECF No. 10, PageID# 2427 n. 2, "and would presently be categorically disabled under the Medical Vocational Guidelines if limited to sedentary work." *Plaintiff's Reply*, ECF No. 15, PageID# 2464. "Considering this and the fact that administrative

13

*res judicata* will be applied to the ALJ's residual functional capacity finding by the Social Security Administration absent some intervention, Plaintiff continues to maintain that this undisputed error is not harmless." *Id.* This Court agrees. As it relates to Plaintiff's RFC, the formal finding of the ALJ appears to be an RFC for a limited range of light work. If, as the Acting Commissioner contends, the ALJ actually intended to find an RFC for a limited range of sedentary work, that finding should be made expressly. Because the ALJ's finding in this regard is at best ambiguous, the Court concludes that the decision must be reversed and the matter must be remanded for clarification of this finding.

### V. CONCLUSION

For these reasons, the Court **GRANTS** *Plaintiff's Statement of Errors,* ECF No. 10, **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*. The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).


Date:  May 23, 2022                                     *s/Norah McCann King*
                                                                            NORAH McCANN KING
                                                             UNITED STATES MAGISTRATE JUDGE